# FLETCHER *v.* BARGE "JOHN I. BRADY."

---

### ADMIRALTY; SALVAGE.

Where the mate of a schooner moored to a wharf, discovering a drifting barge across the bow of his vessel, boarded her and made her fast to his own vessel, in doing which he injured himself slightly, and it appeared probable that if left adrift she would have been driven upon the flats or small craft in the river by the strong wind which was blowing, aided by the slight current, it was *held,* reversing a decree of the lower court dismissing a libel in admiralty for salvage,

that the services rendered entitled the libellant to salvage in the sum of $25, for which sum and costs a decree was directed to be entered.

No. 1123.   Submitted November 14, 1901.   Decided December 4, 1901.

HEARING on an appeal from a decree of the Supreme Court of the District of Columbia, sitting as a District Court of the United States, dismissing a libel in admiralty for salvage.                                                   *Reversed.*

The facts are sufficiently stated in the opinion.

*Mr. Wilton J. Lambert, Mr. D. W. Baker* and *Mr. Stuart McNamara* for the appellant.

*Mr. Andrew Wilson* and *Mr. Noel W. Barksdale* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The appellant, Charles H. Fletcher, appeals from a decree dismissing a libel filed by him against the barge John I. Brady, claiming salvage in the sum of $600.

Fletcher was the mate of the schooner John F. Krantz, which, on February 12, 1901, had been lying for several days at the wharf of Johnson & Wimsatt, in the Potomac river, at the foot of F street, city of Washington.

The John I. Brady is a canal-boat or barge, without sail or steam, and had been moored to another wharf some forty or fifty feet above the Krantz. She was about 125 feet long by 25 feet wide and worth from $2,500 to $3,000. Her owners live in another State. She had come to Washington with a cargo, that had been unloaded a few days before the 12th of February.

The two men composing her crew left her between 2 and 3 P. M. on that date and went into the city on business. She was then apparently secured to the piles of the wharf by large new lines.

About 4 P. M. she was discovered by Fletcher and the master of the John F. Krantz across the bow of that vessel, whose bow stays had been parted by the contact.

There was but little tide, but a strong wind was blowing down the river. There was a line on board fastened at one end to the wharf, which, by some undisclosed agency or accident, had gotten loose from the fastenings on board. Fletcher sprang on board the barge and pushed her off the bow of the schooner. Observing that she was adrift, he secured the line, and, with the assistance of his captain, Jones, made her fast alongside the schooner, using fenders to prevent chafing.

Driven by the high northwest wind, the barge had turned around, and had she not been secured by Fletcher would have drifted down the river.

The evidence does not show that the barge was in imminent danger of certain, loss or destruction; but she was adrift in the stream, with no one on board, and with a strong wind aiding the slight current.

It is reasonable to believe, under the circumstances, that if left adrift she would have been driven upon the flats, or upon some of the vessels and numerous small craft in the stream below.

In hastening to secure the uncoiling line of the barge, Fletcher sustained an injury to his ankle, which, to a slight extent, impaired his capacity for labor for a few days, and caused him to seek medical advice and remedies that cost him five dollars or more.

There is no conflict in the evidence in this case, and the sole question is whether the facts shown to exist constitute what is called a salvage service. We are constrained to differ with the learned justice who presided at the hearing, in the first instance, and to hold that they do, notwithstanding the peril of the drifting barge was not very great, and the labor of securing her, until the return of her crew, was slight.

These conditions have great weight in the matter of the allowance for services rendered, but do not change the na-

ture of the service.    Nor does the absence of danger to the salvor have that effect.    The facts being few and simple, and having been fully stated above, we deem it unnecessary to elaborate our conclusion.    It is sufficient to say that it has the support of the great weight of judicial authority in this country.    *A Raft of Spars,* Abbott Ad. Rep. 485; *The Steamboat Cheeseman* v. *Two Ferry-boats,* 2 Bond, 363; *Bywater* v. *A Raft of Piles,* 42 Fed. Rep. 917; *The Rescue* v. *The Geo. R. Roberts,* 64 Fed. Rep. 139; *The Dupuy De Lome,* 13 U. S. App. 662, 666; *Whitmire* v. *Cobb,* 88 Fed. Rep. 91, and cases cited; 241 *Sticks* of *Timber,* 59 U. S. App. 186; 21 Am. & Eng. Encyc. of Law, 663, 665.

Taking into consideration all the circumstances, including the expenses incurred by the libellant on account of injuries received in securing the drifting barge, and which appear not to have been caused by his own want of proper care at the time, we are of the opinion that the services rendered would be amply and liberally compensated by the allowance of the sum of twenty-five dollars.

The decree, therefore, will be reversed with costs, and the cause remanded with direction to enter a decree for the libellant for that sum with costs.    It is so ordered.

*Reversed.*